# Exhibit A

(Plaintiff's Complaint and Jury Demand)

# To Notice of Removal

## Court Case No: 14-CV-56

PHILIP SIEDEN, an individual
Plaintiff,

v.

CHIPOTLE MEXICAN GRILL, INC., a Delaware corporation,
Defendant.

| STATE OF MINNESOTA | DISTRICT COURT |
| --- | --- |
| COUNTY OF RAMSEY | SECOND JUDICIAL DISTRICT |

| | |
| --- | --- |
| Philip Sieden, | Court File No.: _____ |
| Plaintiff, | |
| v. | **COMPLAINT AND JURY DEMAND** |
| Chipotle Mexican Grill, Inc., | |
| Defendant. | |

Plaintiff Philip Sieden ("Plaintiff"), for his Complaint against Defendant Chipotle Mexican Grill, Inc., ("Defendant"), states and alleges as follows:

## PARTIES

1. Plaintiff is a resident of the City of Falcon Heights, County of Ramsey, State of Minnesota.

2. Defendant is a Delaware Corporation, doing business in Minnesota with its registered office address at 100 South 5th Street #1075, Minneapolis, Minnesota 55402.

3. Plaintiff and Defendant were "employee" and "employer," respectively, as those terms are defined in Minn. Stat. § 363A.03, at all times relevant to this Complaint.

## JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked as violations occurred in the State of Minnesota and involve state law.

5. Venue is appropriate because Defendant transacts a substantial amount of business in the State of Minnesota and the facts giving rise to this action occurred within the borders of the State of Minnesota.

## FACTS

6. Plaintiff began his employment with Defendant on July 29, 2001. During the course of his employment, he received many raises and promotions including a raise on May 20, 2013, about one month before his June 18, 2013 termination. At the time of his termination, Plaintiff was 49-years-old.

7. In May 2011, Plaintiff was promoted to Restaurateur three. Shortly after his promotion, Travis Moe, Team Director – Minnesota, became his indirect supervisor. Todd Patet, Team Leader – Minnesota, remained Plaintiff's direct supervisor and began reporting to Moe. Plaintiff understands Moe to be in his early thirties.

8. In June 2012, Plaintiff was demoted by Moe in title and duties to Restaurateur two for his Crystal, Minnesota store allegedly not performing well. Moe did not inform Plaintiff of the demotion. Plaintiff discovered this about one month later after viewing his electronic scorecard on Defendant's reporting service. He then asked Moe about it who stated that he had to do it and that it was just a "paper thing."

9. After he became Plaintiff's supervisor, Moe immediately began criticizing Plaintiff's work performance, but refused to give Plaintiff any concrete examples or identify specific parts of his job that needed improvement. Moe also refused to provide Plaintiff with any assistance or coaching to fix these alleged deficiencies, because he said that Plaintiff had already been employed with Defendant for more than ten years.

2

10. In early 2013, Plaintiff received four $5,000.00 bonuses for developing personnel at his restaurants.

11. On March 13, 2013, Plaintiff signed his 2012 Restaurant Management Performance Review. The review was positive. Plaintiff received a 3 out of 4, meaning "[a] reliable contributor. Effectively applies themselves to the tasks of the position and typically delivers effective results in many aspects of his or her position." He also received an annual raise after this performance review and a bonus of approximately $3,000.00 for his performance during the second half of 2012. During his twelve years with Defendant, Plaintiff had an impeccable record and never received a negative performance evaluation.

12. On January 29, 2013, Plaintiff's region had its semi-annual meeting, with corporate leaders from Defendant's Denver, Colorado Headquarters in attendance. During that meeting, Moe made his ageism clear by stating that he was excited about his great young team and was inspired by the great young leaders in the room.

13. In April 2013, Moe called a "people development planning meeting" at one of Defendant's offices in Minneapolis, Minnesota. Moe, Patet, Eric Grant, Area Manager, and between seven and nine other managerial employees were present. The discussion began with a roundtable on how managers are moving forward in developing staff at particular restaurants. When the discussion turned to Plaintiff, Moe declared, you are hiring "too many Hmong," employees, referring to Plaintiff's Vadnais Heights, Minnesota location. Plaintiff asked Moe, "what is wrong with Hmong employees? Look around the table, we have lots of diversity," or words similar. Realizing the seriousness of his overtly racist comment, Moe attempted to laugh it off. Plaintiff pressed Moe and asked, "what's wrong with Hmong employees, if I continue to develop them successfully," or words similar. Moe again tried to laugh it off with all other

3

employees awkwardly avoiding eye contact. Grant then diffused the situation by changing the subject.

14. After this meeting, Plaintiff issued a formal verbal complaint to Grant, a higher-ranking Area Manager who reports directly to Moe. Plaintiff stated that he opposed Moe's directive to discriminate against Hmong candidates. Grant agreed that Moe's directive was discriminatory, but advised Plaintiff, "not to rock the boat," if he valued his job. After much thought, Plaintiff agreed to follow Grant's advice.

15. In April or May 2013, after the meeting described in paragraph 13 but before his termination, Plaintiff had another meeting with Moe where he explained that Plaintiff was "part of the past" and that he "had not evolved."

16. On June 18, 2013, Plaintiff was working at the North Maplewood, Minnesota location. Moe and Patet called a meeting with Plaintiff at the nearby Caribou Coffee where they had booked a private room. Moe, who did almost all of the talking, began by lecturing Plaintiff on his job performance, despite the absence of any discipline or an unfavorable performance review. Plaintiff listened to Moe's concerns. Moe explained that he did not believe in Plaintiff and that he did not have what it takes anymore to move forward. Moe then told the story of Manuel Champo, a 21-year-old manager in Chicago, Illinois who turned the Touhy store into "Restaurateur ready," within sixty days. Moe then stated, "I don't see you doing that Phil," and reiterated that he was part of the past. He also told Plaintiff that his "time has come and gone." Moe then terminated Plaintiff's employment for "Involuntary-Unacceptable Work Performance."

17. Plaintiff's termination was less than a month after his most recent raise and two months after his overt opposition to Moe's discriminatory directive.

18. After Moe became Plaintiff's supervisor, he has terminated three members of his management team in total: Scott Showalter, Jeanne Hutar, and Plaintiff. All three employees were openly homosexual and Moe was well aware of that fact.

19. On information and belief, Plaintiff understands that his job duties were taken over by two significantly younger, heterosexual male employees.

20. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## CLAIMS

### COUNT ONE
### AGE DISCRIMINATION IN VIOLATION OF
### THE MINNESOTA HUMAN RIGHTS ACT

Plaintiff realleges each and every paragraph of this Complaint.

21. Defendant, through its managers and officials acting on behalf of Defendant and within the scope of their employment, engaged in unlawful employment practices involving Plaintiff in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et. seq.* These practices include, but are not limited to: altering the terms and conditions of Plaintiff's employment and terminating his employment because of his age.

22. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his age.

23. Defendant failed to take all reasonable steps to prevent discrimination based upon Plaintiff's age from occurring.

5

24. Plaintiff's age was a motivating factor in his termination.

25. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice or with reckless indifference to anti-discrimination laws which protect Plaintiff.

26. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT TWO
## REPRISAL DISCRIMINATION IN VIOLATION OF
## THE MINNESOTA HUMAN RIGHTS ACT

Plaintiff realleges each and every paragraph of this Complaint.

27. Defendant, through its managers and officials acting on behalf of Defendant and within the scope of their employment, engaged in unlawful employment practices involving Plaintiff in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et. seq.* These practices include, but are not limited to: retaliating against Plaintiff in the terms and conditions of his employment after he objected to and reported discrimination to Defendant.

28. Defendant failed to take all reasonable steps to prevent reprisal discrimination, directed at Plaintiff, from occurring.

29. The effect of the practices complained of above have deprived Plaintiff of equal employment opportunities and otherwise adversely affecting his status as an employee because of Defendant's reprisal discrimination.

30. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or reckless indifference to anti-discrimination laws, which protect Plaintiff.

31. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT THREE
## SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT

32. Defendant, through its managers and officials acting on behalf of Defendant and within the scope of their employment, engaged in unlawful employment practices involving Plaintiff in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et. seq.* These practices include, but are not limited to: altering the terms and conditions of Plaintiff's employment and terminating his employment because of his sexual orientation.

33. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his sexual orientation.

34. Defendant failed to take all reasonable steps to prevent discrimination based upon Plaintiff's sexual orientation from occurring.

35. Plaintiff's sexual orientation was a motivating factor in his termination.

36. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice or with reckless indifference to anti-discrimination laws which protect Plaintiff.

7

37. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays:

a) That the practices of Defendant complained of herein be adjudged, decreed and declared to be in violation of the rights secured to Plaintiff by state law.

b) That Defendant be required to make Plaintiff whole for its adverse, retaliatory, and unlawful actions through restitution in the form of back pay, with interest of an appropriate inflation factor.

c) That Plaintiff be awarded front pay and the monetary value of any employment benefits he would have been entitled to as an employee of Defendant.

d) That a permanent prohibitory injunction be issued prohibiting Defendant from engaging in the practices complained of herein.

e) That Plaintiff be awarded compensatory damages in an amount to be determined at trial.

f) That Plaintiff be awarded punitive damages as permitted by statute.

g) That Plaintiff be awarded treble damages as permitted by statute.

h) That the Court award Plaintiff his attorneys' fees, costs, and disbursements pursuant statute.

i) That the Court grant such other and further relief as it deems fair and equitable.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS WHERE TRIAL BY JURY IS AVAILABLE.

Dated: December 17, 2013.

HALUNEN & ASSOCIATES

*(signature)*

Clayton D. Halunen #219721
Ross D. Stadheim #0392475
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

*ATTORNEYS FOR PLAINTIFF*

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorneys' fees may be awarded pursuant to Minn. Stat. § 549.211 to the party against whom the allegations in this pleading are asserted.

Dated: December 17, 2013.

*(signature)*
Ross D. Stadheim