UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Philip Sieden,

      Plaintiff,

v.                                               Case No. 14-cv-56 (JNE/BRT)
                                                  ORDER

Chipotle Mexican Grill, Inc.,

      Defendant.

This matter is an employment discrimination case brought by Plaintiff Philip Sieden against his former employer, Chipotle Mexican Grill, Inc. Sieden, who is an openly gay man and was 49 at the time he was terminated by Chipotle, has filed reprisal, age discrimination, and sexual orientation discrimination claims under the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A. The matter is before the Court on Chipotle's motion for summary judgment. For the reasons provided below, the Court grants Chipotle's motion as to the reprisal and sexual orientation discrimination claims and denies the motion as to the age discrimination claim.

## BACKGROUND

Chipotle is a chain of restaurants with stores across Minnesota. Chipotle hired Sieden in 2001. Sieden worked as a General Manager for approximately two years before moving into a marketing position at Chipotle and then later returning to operations as a manager. In 2006, he became the first General Manager for Chipotle's new store in Vadnais Heights, Minnesota. In 2009, Todd Patet began directly supervising Sieden. For Sieden's 2009 performance review, Patet rated Sieden three out of four stars (with one being the highest star rating), which meant Sieden was a "reliable contributor."

In 2010, Sieden was promoted to a Restaurateur for the Vadnais Heights store. Chipotle describes Restaurateurs as their "very best managers." A primary qualification for becoming a Restaurateur is to be a "General Manager at Chipotle who has developed successful people." By the end of May 2011, Sieden was a Restaurateur for three Minnesota stores: Vadnais Heights, Crystal, and Blaine. Vadnais Heights was Sieden's home restaurant. Restaurateurs with multiple locations manage their home stores, while mentoring the managers at the other stores under their purview. For Sieden's 2010 and 2011 performance reviews, Patet rated Sieden two stars, which meant "[o]utstanding in many areas."

In September 2011, Travis Moe became Team Director of Minnesota, a position from which he supervised Sieden through Patet. Around July 2012, Moe removed the Crystal store from Sieden's management, leaving Sieden as Restaurateur for Vadnais Heights and Blaine. For Sieden's 2012 performance review, Patet gave Sieden three stars, meaning "reliable contributor." The review praised Sieden for maintaining high standards and creating leaders at his home store, Vadnais Heights, but was critical of Sieden's efforts at the Blaine store.

During the first week of April 2013, Chipotle held a planning meeting attended by Patet, Moe, Sieden, and others. Sieden claims that, at the meeting, Moe told him that he was hiring "too many Hmong people" at Vadnais Heights.[1] Sieden was offended and angered by the comment. He objected to the statement, telling Moe that he did not like what Moe had said. The next day, Sieden discussed Moe's statement with Area Manager Eric Grant, who also attended the meeting and witnessed the statement. Sieden did not pursue his objection further.

Around May 20, 2013, Moe and Patet again limited Sieden's responsibilities. Oversight of the Blaine store was taken away from Sieden, and he was assigned to act as General Manager

---

[1] Moe somewhat disputes this account. He testified at deposition that he told Sieden, "don't only hire Hmong employees."

2

of the North Maplewood, Minnesota store. On June 17 or 18, Moe and Patet met with Sieden and informed him that his employment was terminated. On June 21, Chipotle listed Sieden's reason for termination as "Unacceptable Work Performance."

Sieden filed suit in state court, and Chipotle removed the action to this Court. After discovery, Chipotle moved for summary judgment.

## STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must view facts that the parties genuinely dispute in the light most favorable to the nonmovant, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009), and draw all justifiable inferences from the evidence in the nonmovant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

Chipotle's motion for summary judgment seeks dismissal of all three claims. The Court will first analyze the reprisal claim and then the age and sexual orientation discrimination claims.

A. **Reprisal**

Sieden alleges that Chipotle violated the MHRA's prohibition against reprisal, Minn.Stat. § 363A.15, when it terminated him because he objected to Moe's discriminatory comment that

Sieden hired too many Hmong people. Reprisal claims under the MHRA are analyzed using the *McDonnell Douglas* burden-shifting framework. *See McLain v. Andersen Corp.*, 567 F.3d 956, 969 (8th Cir. 2009). Sieden must first demonstrate a prima facie case by showing that: (1) he engaged in statutorily-protected conduct; (2) Chipotle subjected him to an adverse employment action; and (3) there was a causal connection between the two. *Id.* The burden then shifts to Chipotle to articulate a legitimate, non-discriminatory reason for its employment action. *Id.* The burden then shifts back to Sieden to show Chipotle's proffered reasons were pretext for discrimination. *Id.*

Sieden supports his reprisal claim with evidence of the temporal proximity between the protected activity and his termination and evidence of pretext, which can also help demonstrate his prima facie case. *See Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010).

The protected activity occurred during the first week of April, when Sieden objected to Moe's statement. It was at least ten weeks until Sieden was terminated. Sieden argues there is evidence that the relevant date is only seven weeks after the protected activity, which was around the time Chipotle limited Sieden's responsibilities and named him General Manager of North Maplewood. Whether the gap is ten weeks or seven weeks, temporal proximity by itself cannot show that Chipotle's stated reasons for discharge are illegitimate. To survive summary judgment, Sieden must have evidence to support a finding of pretext. *See Gibson v. Geithner*, 776 F.3d 536, 541 (8th Cir. 2015) ("[P]roximity alone is insufficient to establish pretext.").

Sieden lists twelve types of evidence to show pretext, none of which are persuasive. First, Sieden argues that the fact he received a positive performance review months before his termination for unacceptable performance is evidence of pretext. "Recent favorable reviews are often used as evidence that the employer's proffered explanation for the adverse action had no

4

basis in fact or was not actually important to the employer." *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002). However, Sieden's performance review, which was finalized before his protected activity, expressed concerns about his lack of effort and commitment. The decision to terminate him several months later was based in large part on these same concerns.

The performance review notes that Sieden's "team at Blaine suffered" because he did not spend enough time there and makes clear that Sieden's effort and commitment to Blaine must improve. It states in part: "We cannot, however, have another few months of Blaine staying the same, retooling the management team, etc. Quicker decisions and higher expectations are needed." Later email communications echo these concerns. In an April 17, 2013 email from Patet to Sieden, Patet outlined "some pretty shocking things" found in an audit of the Blaine restaurant. Sieden replied and conceded, "I have not spent a lot of time with Blaine in the three weeks since I have returned from vacation." On May 10, Patet emailed Sieden to complain, "[w]e are finding ourselves in the same situation again here at Blaine." Shortly thereafter, Chipotle removed Sieden from Blaine. Sieden was terminated about one month after that. In explaining the termination to a co-CEO at Chipotle, Moe wrote in an email that "the last straw was his total lack of effort in connecting to his new team" at North Maplewood. In their depositions, both Moe and Patet testified that Sieden's performance was unacceptable in large part because he did not put forth the requisite effort.

In short, while Sieden's performance review was not wholly negative, it did raise significant concerns about his performance. The consistency with which Sieden's supervisors expressed and documented their concerns—both before and after Sieden's protected activity—bolsters, rather than rebuts, Chipotle's stated reason for termination. *See Allen Health*, 302 F.3d

at 834. ("Evidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity.").

Second, Sieden argues that Chipotle's failure to follow its progressive discipline policy before terminating him is evidence of pretext. Chipotle denies it has such a policy. Sieden does not point to a written document showing such a policy exists. Instead, he attempts to prove its existence through deposition testimony, primarily his own, about Chipotle's practices. This testimony, though, undermines Sieden's own position. In support of the proposition that Chipotle routinely used "development journals," "write-ups," and other forms as part of its progressive discipline policy, Sieden cites to testimony in which he stated that he used development journals "[o]n occasion" and, as for write-ups, "there's periods of time when stuff like that was used and there's periods of time where it wasn't depending on the viewpoint of the local leadership." Nothing in the record submitted to the Court establishes that there was an applicable progressive discipline policy and that Chipotle failed to follow it. *Cf. Russell v. TG Mo. Corp.*, 340 F.3d 735, 746 (8th Cir. 2003) (finding no inference of pretext based on a deviation from the employer's policy where the policy "affords supervisors and managers latitude in determining an appropriate disciplinary response").

Sieden similarly argues that Chipotle typically did not terminate managers who had not received at least one poor performance review. He points to evidence of Chipotle managers who were terminated or pushed out after they received four stars on their performance reviews, the lowest star rating. Sieden's evidence at most supports the unremarkable proposition that Chipotle terminates its poorest performers. It does not show that Chipotle has a policy against terminating someone in Sieden's position—i.e., someone with three stars instead of four on his most recent performance review.

Third, Sieden argues that Chipotle changed its reasons for Sieden's termination. On June 21, 2013, the official reason for termination was stated as "Unacceptable Work Performance." Sieden asserts that Patet and Moe have since given different reasons, stating in their depositions that Sieden was terminated because he lacked effort, did not listen to feedback from his team, wrote a bad schedule, did not meet expectations, and had no plan for his personal development, among other reasons. To give rise to an inference of pretext, a change in explanation for termination must be substantial. *See Twiggs v. Selig*, 679 F.3d 990, 994 (8th Cir. 2012). Moe and Patet have not substantially changed their reasons. Rather, they have offered more specific reasons consistent with the general reason of unacceptable work performance. *See Allen Health*, 302 F.3d at 835 (finding no substantial change in the proffered reason for termination where the decision maker's testimony elaborated on the original reason). Moreover, many of these specific reasons offered during deposition echo the reasons Moe stated in the June 20, 2013 email explaining the termination decision to a Chipotle co-CEO.[2] This consistency of explanation, pre- and post-litigation, further undermines the claim that Chipotle's reasons have substantially shifted over time.

Fourth, Sieden argues that many of the reasons given are called into question by Blaine General Manager Derek Her's observations. Her was subordinate to and mentored by Sieden. The fact that Her's assessment of Sieden's performance is inconsistent with Patet's and Moe's

---

[2] In that email, Moe explained that Sieden was terminated because: "[W]eek after week he failed to meet basic expectations as simple as writing an ideal schedule. There are literally a dozen reasons why we got to this point and it was even noted in his last performance review. Another thing I started to notice that I just could not overlook was how his lack of effort bled into the rest of the leadership team. They knew he didn't work full days and his lack of desire certainly did not lead to elevation in anyway. . . . [T]he last straw was his total lack of effort in connecting to his new team or inspiring them with a vision."

assessments, which were based on their own observations as Sieden's superiors and feedback from Sieden's team members, is insufficient to undermine Chipotle's stated reasons.

Fifth, Sieden argues that Chipotle continues to employ Restaurateur Alex Cortes, even though two of Cortes's four locations were taken away from him. Cortes allegedly is 27, straight, and has not objected to Moe's comments or behavior. Sieden argues that these facts support an inference of retaliation or discrimination. But Sieden has no evidence about the type or magnitude of Cortes's performance problems and whether they continued after Cortes's restaurants were taken away. There is no evidence that Cortes's performance issues were comparable to Sieden's lack of effort and Sieden's other documented issues. Because Sieden has not shown that Cortes was similarly situated to him in these relevant respects, Chipotle's treatment of Cortes does not create an inference that Chipotle's stated reasons for termination are illegitimate. *See Fiero v. CSG Systems, Inc.*, 759 F.3d 874, 879 (8th Cir. 2014) (stating that, at the pretext stage of *McDonnell Douglas*, the plaintiff has the burden of proving that any comparators "were similarly situated in all relevant respects").

Sixth, Sieden argues that Chipotle's failure to investigate after Sieden reported Moe's discriminatory comment to Grant is evidence of pretext. However, there is no evidence that Sieden made a formal objection necessary to trigger an investigation. He is alleged to have discussed the matter with Eric Grant, an area manager who was subordinate to Moe and was present when Moe made the comment. Sieden testified at deposition that he discussed the comment with Grant "because I felt very close to him at that time and safe in talking to him to get some advice and venting with him as well." Sieden does not allege he pursued his objection further than his conversation with Grant, and he admits he did not complain to any of Moe's

superiors. Sieden points to no policy under which his conversation with Grant should have triggered an investigation.

Seventh, Sieden argues that violations routinely viewed as minor can be evidence of pretext because they appear contrived. The record here contains examples provided by Chipotle that, on first blush, appear to be minor concerns, such as Sieden's failure to write a good schedule on occasion and his use of a personal day. These examples, though, do not appear contrived when viewed in the larger context of Moe's and Patet's concerns about Sieden's performance. Patet specifically mentioned the schedule writing as an example of Sieden's lack of effort, stating in his deposition that Sieden "blamed [the schedule] on the service manager who wrote the schedule when . . . we specifically told him that he needed to be the one writing the schedules." The personal day was an example of Sieden's lack of communication because, as Patet explained, Sieden took the personal day, even though "he never put in for, asked for, [and] didn't mention a personal day to me until I noticed on the schedule that he only had four days that week."

Eighth, Sieden argues that a jury could find he was not terminated in part for his failure to have his restaurants achieve Restaurateur status, as Chipotle contends, because most Chipotle restaurants in Minnesota have not achieved that status.[3] However, Sieden admits that it was his responsibility to achieve Restaurateur status for the Blaine and Crystal locations and he failed to meet this goal. It is not for the Court to judge how much weight Chipotle should have given to Sieden's failure to achieve this goal. *See Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 883 (8th Cir. 2005) (Courts "do not sit as super-personnel departments reviewing the wisdom or

---

[3]   Restaurateur is both a job title, which Sieden held, and a status given to restaurants.

fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination or unlawful retaliation.") (internal quotation omitted).

Ninth, Sieden maintains that he excelled at developing great leaders. Chipotle concedes he had success in this area of his job. His success here, though, does not create a fact issue with respect to whether his failures in other aspects of his job warranted termination.

Tenth, Sieden was in charge of the North Maplewood restaurant for only a month before he was terminated. He argues that this short timeframe is evidence of pretext because it was not long enough to allow Sieden to show results. While it may have been too short to see results, it was not too short for Moe and Patet to observe Sieden's effort and conclude it was wanting.

Eleventh, Sieden argues that his restaurant at Vadnais Heights continued to produce strong numbers, thus undermining Chipotle's argument that he was terminated for poor performance. Sieden concedes that, leading up to his termination, he was spending the vast majority of his time at the North Maplewood restaurant. It was not illegitimate or improper for Chipotle, in evaluating Sieden's performance, to focus on his efforts at the restaurant where he was spending most of his time.

Twelfth, Sieden argues that Chipotle has offered inconsistent statements about who made the decision to terminate him. Sieden points to evidence showing that Moe, and not just Patet, was responsible. He contrasts this evidence with Chipotle's contention in its brief that "Patet independently decided to terminate Plaintiff." Chipotle, in its reply, clarifies that it did not mean to suggest that Moe had no role in the termination decision but rather that Patet based his decision on independent observations and did not rely on what Moe told him. Read as a whole, Chipotle's brief does not claim that Moe was not, at least in part, responsible for the termination decision. To the contrary, Chipotle's brief acknowledges that Moe was a decision maker in the

process. Chipotle's use of the word "independently" to describe the degree of Moe's influence over Patet does not show that Chipotle has been sufficiently inconsistent on this issue to constitute pretext.

Sieden has offered a long list of evidence in an attempt to show pretext. However, all this evidence—whether viewed individually or together—is unpersuasive. The record is insufficient to establish a trial-worthy issue on Sieden's reprisal claim.

### B. Age Discrimination

The MHRA prohibits an employer from discharging an employee on the basis of his age. Minn. Stat. § 363A.08, subd. 2. There is a debate over whether the MHRA requires a plaintiff to prove that age was the "but for" cause or to prove that age "actually motivated" the employment decision. *See Larson v. Arthur J. Gallagher & Co.*, No. 13-cv-1506, 2014 WL 6886436, at *2 (D. Minn. Dec. 4, 2014). The parties disagree on the proper standard here. The Court need not resolve the issue because, under either standard, the outcome is the same: Sieden's claim survives summary judgment.

A plaintiff can prove age discrimination through a direct method or through the burden-shifting analysis established in *McDonnell Douglas*. *See Wagner v. Gallup, Inc.*, 788 F.3d 877, 883 (8th Cir. 2015). "Direct method cases are adjudicated based on the strength of affirmative evidence of discriminatory motive." *Id.* (internal quotation omitted).

Sieden's direct evidence of age discrimination consists of comments Moe allegedly made when he and Patet informed Sieden of his termination. Sieden alleges that Moe discussed how a "21-year-old kid, brand new GM" fixed a failing restaurant. Moe then stated: "I don't see you doing that, Phil. You can't do that, Phil." Moe told Sieden that his "time has come and gone" and he was "part of the past."

11

In these comments, Moe does not directly express a preference for younger employees. Moe also does not mention Sieden's age or lack of youth. While Moe states that Sieden's "time has come and gone" and he is "part of the past," these comments on their face refer to Sieden's tenure at Chipotle, not his age. Comments about an employee's tenure with the employer are not the same as comments about the employee's age and are not direct evidence of age discrimination. *See Erickson v. Farmland Industries, Inc.*, 271 F.3d 718, 725 (8th Cir. 2001). The Court finds that these comments, by themselves, do not create a triable issue.

Where a plaintiff lacks direct evidence that clearly points to an illegal motive, the plaintiff must avoid summary judgment by creating the requisite inference through the *McDonnell Douglas* burden-shifting analysis. *See Hilde v. City of Eveleth*, 777 F.3d 998, 1004 (8th Cir. 2015). To establish his prima facie age discrimination case, Sieden must show he: (1) was over 40; (2) suffered an adverse employment action; (3) was qualified for the job; and (4) was replaced by someone substantially younger.[4] *Id.*

Chipotle argues that Sieden's prima facie case fails at the third and fourth elements. Chipotle cites case law formulating the third element as requiring a plaintiff to show he was meeting the employer's "legitimate expectations," as opposed to showing that he was "qualified for the job." *See Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1039 (8th Cir. 2007). However, the Eighth Circuit Court of Appeals has made clear that, "under either formulation," the "prima facie burden is not so onerous" and the plaintiff "establishes his prima facie case if, setting aside [the employer's] reason for firing him, he was *otherwise* meeting expectations or

---

[4] In a footnote, Sieden cites to a footnote in a 1996 Eighth Circuit Court of Appeals opinion for the proposition that he is not required to prove he was replaced by substantially younger employees. *See Parrish v. Immanuel Medical Center*, 92 F.3d 727, 733 n. 2 (8th Cir. 1996). The Court need not address this argument because Sieden does in fact prove he was replaced by substantially younger employees.

*otherwise* qualified." *Lake*, 596 F.3d at 874 (internal quotations omitted). The reason for this not-so-onerous standard is that "the plaintiff should not be tasked with anticipating and disproving his employer's reasons for termination during his prima facie case." *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 470 (8th Cir. 2011). Because of Sieden's nearly ten years of experience as a manager at Chipotle, and his undisputed success as a Restaurateur for Vadnais Heights, it is clear that Sieden meets this burden. *See McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 874 n .2 (8th Cir. 2007) ("[W]here discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw.").

With respect to the fourth element, Chipotle argues that Sieden cannot prove he was replaced because, when Sieden was terminated, he was a Restaurateur and "Restaurateurs are not replaceable." Chipotle argues that, when a Restaurateur is terminated, his restaurants may not have another Restaurateur mentor but may instead operate with only a General Manager overseeing operations. Chipotle asserts that, after Sieden was terminated, his role as a Restaurateur mentor was not filled.

Chipotle's assertion that Restaurateurs, unlike General Managers, are irreplaceable is highly questionable. The record suggests the distinction between Restaurateurs and General Managers is not great. For example, when asked at deposition whether a person could be both a Restaurateur and a General Manager, Moe stated: "It's the same thing. A restaurateur is a general manager."

In Sieden's case, the difference between Restaurateur and General Manager vanishes entirely. Chipotle states in its reply brief that, at the time Sieden was terminated, his "sole responsibility was to be the acting General Manager of North Maplewood." Asked at deposition

13

whether Sieden was a Restaurateur or a General Manager when he ran North Maplewood, Patet explained:

> Again, one and the same. When he's down to one restaurant . . . he never loses the title of restaurateur but that restaurant is not a restaurateur restaurant. So he's there as the acting general manager of that restaurant[,] for sure as a restaurateur at that point with no other responsibilities other than working his 50 hours a week and building a culture at that restaurant.

In other words, Sieden may have had the title of Restaurateur at the time of his termination but he was performing the duties of a General Manager.[5]

A replacement need not have the same job title. What matters is whether the replacement has the same job duties. *See Holmes v. Trinity Health*, 729 F.3d 817, 822 (8th Cir. 2013). On the record before the Court, a reasonable fact finder could determine that the employee who assumed managerial responsibilities for North Maplewood after Sieden left was Sieden's replacement, regardless of whether he had the title Restaurateur or General Manager. Sieden points to evidence that Aaron Parr, who was 32 at the time of Sieden's termination, became manager of North Maplewood.[6] Chipotle does not dispute this fact. The 17-year age difference between Parr and Sieden is substantial.

Sieden disputes Chipotle's contention that he was down to one restaurant at the time of his termination. He points to evidence showing that, while he had been removed earlier from overseeing the Blaine store, he had not ceased running Vadnais Heights. If Sieden is correct, here too he can show he was replaced by someone younger, even if the replacement did not have the title of Restaurateur. As Patet explained in his deposition: "A restaurateur, if they have multiple restaurants, they're still primary general manager of their home restaurant." Patet later reiterated the point: "[T]he restaurateur is the general manager of their home store." Sieden's home

---

[5] Moe also testified at deposition that Sieden was acting as the General Manager of the North Maplewood store.

[6] Parr became a Restaurateur for North Maplewood in February 2014.

restaurant was Vadnais Heights, meaning he acted as the General Manager there. After Sieden was terminated, 23-year-old Yeleng Michael Lor was named General Manager of Vadnais Heights, taking over the managerial duties previously performed by Sieden. Thus, regardless of whether one looks to North Maplewood, Vadnais Heights, or both, Sieden can show he was replaced by someone substantially younger.

Having established his prima facie case, Sieden must support his claim with evidence of pretext. To show pretext, Sieden points to Moe's comments at the time of his termination and Moe's frequent use of the phrase "young leaders." Sieden testified at deposition that, at one particular meeting, Moe made the point that "some people need to step aside and let the young leaders have their opportunity," though Sieden could not recall Moe's exact words. Sieden also alleges that, in the last few months of his employment, Moe told him that he was "part of the past" and that he had not "evolved." Finally, Sieden points to the evidence of his substantially younger replacements.

Taken together, this evidence is sufficient to survive summary judgment. Moe's comment encouraging people "to step aside and let the young leaders have their opportunity" can reasonably be construed as expressing a preference for younger managers and a desire for older managers to leave Chipotle. While Chipotle asserts that, in Chipotle's vernacular, the phrase "young leaders" refers to employees' experience and not their age, a jury could reasonably conclude otherwise. Moe's comments at the time of Sieden's termination—comparing Sieden's performance to the results achieved by a 21-year-old and telling Sieden his "time has come and gone"—appear more problematic when viewed in light of the evidence that Moe preferred younger leaders. Moreover, while replacement by younger employees often has little probative

value with respect to pretext,[7] on these facts, it shows that Sieden's termination furthered Moe's stated goal of creating more opportunities for young leaders to move up at Chipotle.

On this evidence, a reasonable jury could find discrimination on the theory that Moe wanted older managers like Sieden out of the way, and when Sieden did not leave voluntarily, Moe terminated him because of his age. *See Morse v. Southern Union Co.*, 174 F.3d 917, 923 (8th Cir. 1999) (affirming a jury finding of age discrimination because "the jury reasonably could have inferred that [a top management official's] stated preference for younger employees motivated [the supervisor's] decision to terminate [the plaintiff]").

Chipotle's attempt to avoid liability by painting Patet as a relevant decision maker with no age-based bias is unavailing. Chipotle argues that Patet independently decided to terminate Sieden, and there is no evidence that Patet made this decision based on age or any other discriminatory factor. However, there is abundant evidence that Moe's influence permeated the decisional process. Chipotle concedes Moe was involved in the termination decision, at the very least by agreeing with Patet that it was time to discharge Sieden. Indeed, Patet testified at deposition that "it was a joint decision for sure." Furthermore, it is undisputed that Moe was thinking about the termination decision as early as June 4, 2013, when he wrote an email to his superior, stating in part: "Phil [Sieden] is probably on his last week with us. . . . I will call you before the final decision is made." It is also undisputed that Moe, not Patet, justified the termination decision to Chipotle's co-CEO, writing in a June 20 email that, "I was left with no choice but to say goodbye [to Sieden.]" Finally, as Patet's superior, Moe could be expected to have set the tone with respect to employment decisions and the factors that go into making them.

---

[7] *See, e.g., Carraher v. Target Corp.*, 503 F.3d 714, 719 (8th Cir. 2007).

16

A reasonable jury could find that Moe's discriminatory motives infected the decisional process such that Patet's involvement does not protect Chipotle from liability.

### C. Sexual Orientation Discrimination

Sieden also alleges that his termination violated the MHRA's prohibition on sexual orientation discrimination. Minn. Stat. § 363A.08. Sieden relies on indirect evidence to show that Chipotle's stated reason for termination is pretext for discrimination.

Sieden's primary evidence is a comment that Moe allegedly made to him in early 2013. At a management meeting, Moe greeted Sieden by stating, "guten morgen, fraulein," which means "good morning, lady" in German. While the comment may have been offensive, it does not support a finding of discrimination or pretext because it is a stray remark remote in time from and unrelated to the adverse employment decision. *See Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 428 (8th Cir. 1999).

Sieden's additional evidence is that two openly gay Restaurateurs, Scott Showalter and Jean Hutar, were supervised by Moe and their employment "ended under suspicious circumstances." Evidence of how an employer treated other employees in the same protected class can show discrimination. *See Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Sieden, though, fails to explain how Moe's treatment of Showalter and Hutar shows bias or discrimination based on sexual orientation. Showalter attests in an affidavit that he quit after Moe told him he "didn't have the goods anymore" because Showalter believed Moe would otherwise have begun the termination process. Similarly, Sieden asserts that Hutar quit after Moe demoted her. Sieden, though, does not explain how Moe's actions were discriminatory. In fact, Hutar testified at deposition that she did not feel Moe treated people differently based on their sexual orientation. Showalter testified at deposition that he had no knowledge of Moe saying

anything discriminatory about him or anyone else based on sexual orientation. The mere fact that two other openly gay managers in Minnesota suffered adverse employment actions is not enough to save Sieden's discrimination claim from dismissal on summary judgment.

Sieden's only other evidence of discrimination is the evidence of pretext the Court analyzed with respect to the reprisal claim. The Court has already explained why this evidence is unpersuasive and will not repeat its analysis in this section.

On the record before the Court, no reasonable jury could find in favor of Sieden on his sexual orientation-based claim.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's motion for summary judgment [Docket No. 27] is GRANTED in part and DENIED in part as follows:

    a. The motion is GRANTED with respect to Plaintiff's reprisal and sexual orientation discrimination claims, and those claims are DISMISSED.

    b. The motion is DENIED with respect to Plaintiff's age discrimination claim.

Dated: September 3, 2015

s/Joan N. Ericksen  
JOAN N. ERICKSEN  
United States District Judge